Nos. 23-1174 (L), 23-1221, 23-1175 (L), 23-1222

─────────────

# In the United States Court of Appeals for the District of Columbia Circuit

─────────────

CITY OF PORT ISABEL, ET AL.,
*Petitioners*,

v.

FEDERAL ENERGY REGULATORY COMMISSION,
*Respondent,*

RIO BRAVO PIPELINE COMPANY, LLC; RIO GRANDE LNG, LLC;
TEXAS LNG BROWNSVILLE LLC,
*Intervenors for Respondent.*

─────────────

On Petitions for Review of Orders of the
Federal Energy Regulatory Commission

─────────────

## BRIEF FOR THE GOVERNOR OF TEXAS AS AMICUS CURIAE IN SUPPORT OF INTERVENORS' PETITIONS FOR REHEARING OR REHEARING EN BANC

─────────────

GREG ABBOTT
Governor of Texas

Office of the Governor
P.O. Box 12428
Austin, Texas  78711
[Tel.] (512) 936-3306
[Fax] (512) 463-1932

JAMES P. SULLIVAN
General Counsel
james.sullivan@gov.texas.gov

TREVOR W. EZELL
Deputy General Counsel

*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

Interest of Amicus Curiae ...........................................................................1

Argument ....................................................................................................1

   I.   The Texas Commission On Environmental Quality Already Addressed Public Comments On Air Quality When It Permitted These Liquefied Natural Gas Terminals .......................1

   II.  FERC Should Be Subjected, At Worst, To Another Remand Without Vacatur ........................................................................5

Conclusion ..................................................................................................9

Certificate of Counsel ...............................................................................10

Certificate of Compliance ........................................................................10

Certificate of Service ................................................................................10

TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.P. Bell Fish Co. v. Raimondo*, 94 F.4th 60 (D.C. Cir. 2024)................6

*Allied-Signal, Inc. v. NRC*, 988 F.2d 146 (D.C. Cir. 1993) ......................6

*Am. Public Gas Ass'n v. DOE*, 22 F.4th 1018 (D.C. Cir. 2018) ...............8

*EME Homer City Generation, L.P. v. EPA*,
     795 F.3d 118 (D.C. Cir. 2015)...........................................................6

*Heartland Reg'l Med. Ctr. v. Sebelius*,
     566 F.3d 193 (D.C. Cir. 2009)...........................................................7

*Michigan v. EPA*, 268 F.3d 1075 (D.C. Cir. 2001) ..................................2

*Shrimpers & Fishermen of the RGV v. TCEQ*,
     968 F.3d 419 (5th Cir. 2020) (per curiam) ......................................4

*Sierra Club v. FERC*, 867 F.3d 1357 (D.C. Cir. 2017)..............................6

*Sugar Cane Growers Co-op of Fla. v. Veneman*,
     289 F.3d 89 (D.C. Cir. 2002) ............................................................8

*Texas v. EPA*, 829 F.3d 405 (5th Cir. 2016)............................................2

*TCEQ v. Vecinos para el Bienestar de la Comunidad Costera*,
     No. 03-21-00395-CV, 2023 WL 4670340
     (Tex. App.—Austin July 21, 2023, no pet.) ....................................4

*Vecinos para el Bienestar de la Comunidad Costera v. FERC*,
     6 F.4th 1321 (D.C. Cir. 2021) ...........................................................7

CONSTITUTION, STATUTES, AND RULES

TEX. CONST. art. IV, § 1 ...........................................................................1

42 U.S.C. § 4332 ......................................................................................6

TEX. HEALTH & SAFETY CODE § 382.011....................................................3

TEX. HEALTH & SAFETY CODE § 382.0158..................................................3

TEX. WATER CODE § 5.013.........................................................................3

40 C.F.R. § 52.2270 .................................................................................2

TEX. ADMIN. CODE ch. 39 ................................................................3

TEX. ADMIN. CODE ch. 55 ................................................................3

TEX. ADMIN. CODE ch. 116 ..............................................................3

FED. R. APP. P. 29 ...........................................................................1

**OTHER AUTHORITIES**

Executive Order GA-33, 46 Tex. Reg. 1117 (2021) ...................................1

INTEREST OF AMICUS CURIAE

Texas is the economic engine of America because it is the energy capital of the world.  In his role as "the Chief Executive Officer of the State," TEX. CONST. art. IV, § 1, Governor Greg Abbott must oppose federal overreach when it threatens an energy industry that employs hundreds of thousands of Texans and contributes billions of dollars a year in taxes and royalties.  *See, e.g.*, Executive Order GA-33, 46 Tex. Reg. 1117–18 (2021).  Accordingly, he files this amicus brief in support of the intervenors' petitions for rehearing or rehearing en banc.[*]

ARGUMENT

### I. THE TEXAS COMMISSION ON ENVIRONMENTAL QUALITY ALREADY ADDRESSED PUBLIC COMMENTS ON AIR QUALITY WHEN IT PERMITTED THESE LIQUEFIED NATURAL GAS TERMINALS.

In condemning the absence of a supplemental environmental impact statement, the panel chided the Federal Energy Regulatory Commission (FERC) for "not solicit[ing] any public comment on the final cumulative air emissions model upon which [it] eventually relied in its analysis."  Panel Op. 18.  FERC's "fifteen-day comment period on

---

[*]  No counsel for any party authored this brief in whole or in part; no party or counsel made a monetary contribution intended to fund its preparation or submission; and no person other than amicus or his counsel made such a contribution.  *See* FED. R. APP. P. 29(a).

1

the developer responses" was not good enough, the panel reasoned, because "a forty-five-day comment period on a draft supplemental EIS . . . would have included not just the developer responses but the later-submitted air modeling data and the Commission's proposed analysis—and required FERC to address comments in the final version." *Id.* at 19–20 (internal quotation marks omitted).  So the panel vacated FERC's reauthorization orders outright.  *Id.* at 33–34.

In calibrating a remedy for any procedural sins on FERC's part, this Court should not disregard all the work that the Texas Commission on Environmental Quality (TCEQ) has already performed as part of the Clean Air Act's "experiment in cooperative federalism." *Michigan v. EPA*, 268 F.3d 1075, 1083 (D.C. Cir. 2001); *see also Texas v. EPA*, 829 F.3d 405, 411 (5th Cir. 2016).  Pursuant to Texas's federally approved State Implementation Plan, *see* 40 C.F.R. § 52.2270, TCEQ evaluated the potential impacts of air emissions from the liquefied natural gas export terminals at issue here.  The state agency determined that these terminals in the Rio Grande Valley will not cause or contribute to air pollution, when operated in accordance with a so-called Prevention of Significant Deterioration permit.  TCEQ thus issued one such air-

quality permit to Rio Grande LNG, LLC on December 17, 2018, and another to Texas LNG Brownsville, LLC on May 12, 2020.  *See, e.g.*, JA269; *see also* TEX. HEALTH & SAFETY CODE §§ 382.011, 382.0158; TEX. WATER CODE § 5.013; TEX. ADMIN. CODE ch. 116.

Prior to issuance, both permit applications were subject to the full spectrum of public participation demanded by TCEQ's rules.  *See, e.g.*, TEX. ADMIN. CODE chs. 39, 55, 116.  Local newspapers published a pair of notices for each permit application, in English and Spanish.  The first—a "Notice of Application and Intent to Obtain Permit"—told the public that TCEQ had finished its initial administrative review of the application.  The second—a "Notice of Application and Preliminary Decision"—informed readers that TCEQ had completed its technical review and prepared a draft permit for public comment.

A public meeting was then held for each permit application, with meeting notices mailed to all interested persons and published by local newspapers, again in English and Spanish.  Each meeting began with an informal session where the public could ask questions of TCEQ staff and of the permit applicant.  The meeting then proceeded to formal submission of oral comments by members of the public.  In addition, the

3

public comment period allowed for the submission of written comments to TCEQ.

After the notice-and-comment period closed, TCEQ staff prepared and mailed out a formal, written response addressing all of the public comments that the state agency received on each permit application. Within thirty days of this response to comments, members of the public could (and did) ask TCEQ's three Commissioners, in an open meeting, to reconsider the proposed draft permits or refer them to the State Office of Administrative Hearings for a contested case hearing before an administrative law judge.

With respect to the Rio Grande application, TCEQ denied all requests for reconsideration or an ALJ hearing, and issued the permit. As for the Texas LNG application, TCEQ referred the permit for a hearing, considered the ALJ's proposal for decision, and ultimately decided to issue the permit. Motions for rehearing were received by TCEQ as to each permit, but overruled by operation of law. Judicial review was then sought—unsuccessfully—as to TCEQ's permits. *See Shrimpers & Fishermen of the RGV v. TCEQ*, 968 F.3d 419 (5th Cir. 2020) (per curiam); *TCEQ v. Vecinos para el Bienestar de la Comunidad*

*Costera*, No. 03-21-00395-CV, 2023 WL 4670340 (Tex. App.—Austin July 21, 2023, no pet.).

The panel opinion vacating FERC's reauthorization orders demonstrated no awareness of all this additional review by Texas regulators, who were administering Texas environmental laws, on behalf of Texas communities that stand to benefit from these projects.

## II.    FERC Should Be Subjected, At Worst, To Another Remand Without Vacatur.

Before issuing air-quality permits to Rio Grande and Texas LNG, TCEQ spent considerable time and resources evaluating the terminals' emissions, addressing public comments about their impact on the Rio Grande Valley, and determining that they complied with the applicable environmental standards.   Now, years later, a panel of this Court believes that FERC should consider still more comments on air-quality data and analysis, beyond those the federal agency already addressed during its own notice-and-comment period.  *See* Panel Op. 18–20.

To vacate FERC's reauthorization orders on this ground is to impose a disproportionate remedy. The panel seemingly rested its decision on FERC's failure to adequately assess "environmental justice" factors as part of its review under federal law.  Panel Op. 4, 7, 10–20,

26–28, 34.  The problem, of course, is that the National Environmental Policy Act's requirement to prepare an environmental impact statement says nothing about any environmental-justice review. *See id.* at 5–6 (citing 42 U.S.C. § 4332(2)(C)).  That obligation stems only from executive orders that "encourage[] agencies to consider whether the projects they sanction will have a 'disproportionately high and adverse' impact on low-income and predominantly minority communities." *Sierra Club v. FERC*, 867 F.3d 1357, 1368 (D.C. Cir. 2017) (Griffith, J.).

This Court has repeatedly held that the propriety of remand without vacatur depends on (1) the seriousness of the deficiency and (2) the likely disruption vacatur would cause.  *See, e.g.*, *Allied-Signal, Inc. v. NRC*, 988 F.2d 146, 150–51 (D.C. Cir. 1993); *EME Homer City Generation, L.P. v. EPA*, 795 F.3d 118, 132 (D.C. Cir. 2015) (Kavanaugh, J.).  Indeed, just a few months before the panel opinion in this case, this Court ordered remand without vacatur based on a deficient economic analysis by the National Marine Fisheries Service. *See A.P. Bell Fish Co. v. Raimondo*, 94 F.4th 60, 65 (D.C. Cir. 2024).

The panel should have done the same thing here.  Failure to comply with guidance nowhere found in NEPA's statutory EIS

requirement ought to score low marks on seriousness of deficiency. Instead, the panel invented an unheard-of rule that a deficiency is too "serious" anytime an agency would have to take some "procedural step" to cure the deficiency. Panel Op. 33–34. That is at odds with previous decisions of this Court finding that notice-and-comment errors, like those (allegedly) at issue here, were sufficiently non-serious to merit remand without vacatur. *See, e.g.*, *Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 198–99 (D.C. Cir. 2009).

When it comes to "disruptive consequences," the panel practically conceded what common sense suggests: Vacatur here will be incredibly disruptive. Panel Op. 34. On the last go-round, a different panel "credit[ed] Intervenors' assertion that vacating [FERC's] orders would needlessly disrupt completion of the projects" by "imperil[ing their] ability to obtain funding necessary to complete the projects in a timely fashion." *Vecinos para el Bienestar de la Comunidad Costera v. FERC*, 6 F.4th 1321, 1332 (D.C. Cir. 2021).

Three years later, and fifteen months into the construction of one of these vital energy-sector projects (*i.e.*, the Rio Grande terminal), the disruption caused by scuttling a pair of multi-billion-dollar terminals

7

has only grown in magnitude. Texas's economy should not be made to suffer for FERC's supposed misstep. Consider the impact on the Rio Grande Valley: The panel opinion's vacatur remedy threatens to kill thousands of high-paying jobs, in a border community where Texans are eager for the work, just because federal bureaucrats got a two-strikes-you're-out call from this Court in Washington, D.C. "The egg," unquestionably, "has already been scrambled." *Sugar Cane Growers Co-op of Fla. v. Veneman*, 289 F.3d 89, 97 (D.C. Cir. 2002).

If the panel was concerned that FERC might not act quickly enough to address the identified deficiencies, a less harsh remedy was readily available. Namely, the panel could have remanded without vacatur, subject to an order that FERC "fix [the] deficient rule by a time certain." *See, e.g.*, *Am. Public Gas Ass'n v. DOE*, 22 F.4th 1018, 1030–31 (D.C. Cir. 2018). The panel made no effort to explain why this option was insufficient.

\*    \*    \*

TCEQ heard and addressed public comments from people in the Rio Grande Valley before issuing the air-quality permits that have strengthened their local economy. FERC did, too, but not to the panel's

satisfaction.  This Court should not subject the Rio Grande Valley to the disparate impact that will come from vacatur—and certainly not in the name of "environmental justice."  Panel Op. 4, 7, 10–18, 20.

## CONCLUSION

This Court should grant the intervenors' petitions for rehearing or rehearing en banc.

Respectfully submitted.

GREG ABBOTT
Governor of Texas

 /s/ James P. Sullivan
JAMES P. SULLIVAN
General Counsel
james.sullivan@gov.texas.gov

TREVOR W. EZELL
Deputy General Counsel

Office of the Governor
P.O. Box 12428
Austin, Texas  78711
[Tel.] (512) 936-3306
[Fax] (512) 463-1932

*Counsel for Amicus Curiae*

**CERTIFICATE OF COUNSEL**

To the extent that D.C. Circuit Rule 29(d) requires certification by state-government amici, I certify that this separate brief is necessary because the Governor of Texas is in a unique position to describe the consequences of the panel opinion for state agencies and for the Texas economy.

/s/ James P. Sullivan
James P. Sullivan
*Counsel for Amicus Curiae*

**CERTIFICATE OF COMPLIANCE**

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 29(b)(4) because it contains 1639 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word (the same program used to calculate the word count).

/s/ James P. Sullivan
James P. Sullivan
*Counsel for Amicus Curiae*

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 28, 2024, I electronically filed this amicus brief with the Clerk of Court for the U.S. Court of Appeals for the D.C. Circuit.  I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ James P. Sullivan
James P. Sullivan
*Counsel for Amicus Curiae*