**Nos. 23-1174, 23-1221, 23-1175, 23-1222**

# In the United States Court of Appeals for the District of Columbia

―――――――――

CITY OF PORT ISABEL *et al.*, *Petitioners*,

v.

FEDERAL ENERGY REGULATORY COMMISSION, *Respondent*,
RIO BRAVO PIPELINE COMPANY, LLC and RIO GRANDE LNG, LLC,
*Intervenors for Respondent*

―――――――――

CITY OF PORT ISABEL AND SIERRA CLUB, *Petitioners*,

v.

FEDERAL ENERGY REGULATORY COMMISSION, *Respondent*,
TEXAS LNG BROWNSVILLE, LLC, *Intervenor for Respondent.*

―――――――――

On Petitions for Review of Orders of the
Federal Energy Regulatory Commission

―――――――――

**BRIEF OF AMICI CURIAE AMERICAN PETROLEUM INSTITUTE,
AMERICAN EXPLORATION AND PRODUCTION COUNCIL, CENTER
FOR LNG, NATURAL GAS SUPPLY ASSOCIATION, US LNG
ASSOCIATION, INDEPENDENT PETROLEUM ASSOCIATION OF
AMERICA, AND TEXAS OIL AND GAS ASSOCIATION IN SUPPORT
OF REHEARING**

―――――――――

John S. Moran
Grace Greene Simmons
MCGUIREWOODS LLP
888 16th Street N.W., Suite 500
Washington, D.C. 20006
(202) 828-2817
*jmoran@mcguirewoods.com*
*gsimmons@mcguirewoods.com*

*Counsel for Amici*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES*

Pursuant to D.C. Circuit Rule 28(a)(1), *Amici* submit this certificate as to parties, rulings, and related cases.

### A.    PARTIES AND *AMICI*

All parties, intervenors, and *amici* previously appearing in this Court are listed in Petitioners' Circuit Rule 28(a)(1) certificate.

### B.    RULINGS UNDER REVIEW

Petitioners seek review of several orders of the Federal Energy Regulatory Commission: Rio Grande, LNG, LLC, 183 FERC ¶ 61,046 (Apr. 21, 2023), R. 3011, JA1-176; Rio Grande LNG, LLC, 185 FERC ¶ 61,080 (Oct. 27, 2023), R. 3080, JA177-238; Texas LNG Brownsville, LLC, 183 FERC 61,047 (Apr. 21, 2023); Texas LNG Brownsville, LLC, 185 FERC 61,079 (Oct. 27, 2023).

### C.    RELATED CASES

These cases here, *City of Port Isabel v. FERC* (Nos. 23-1174, 23-1221) and *City of Port Isabel v. FERC* (Nos. 23-1175, 23-1222), raise similar issues

---

* Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), no counsel for any party authored this brief in whole or in part, and no party or counsel for a party contributed money intended to fund the preparation or submission of this brief. No person other than *amici curiae*, their members, or their counsel contributed money intended to fund the brief's preparation or submission.

i

involving authorizations issued by FERC to Intervenors. This Court previously issued an opinion on the initial authorizations in *Vecinos para el Bienestar de la Comunidad Costera v. FERC*, 6 F.4th 1321 (D.C. Cir. 2021).

Dated: October 28, 2024                    */s/ John S. Moran*
                                           John S. Moran
                                           Grace Greene Simmons
                                           MCGUIREWOODS LLP
                                           888 16th Street N.W., Suite 500
                                           Washington, D.C. 20006
                                           (202) 828-2817
                                           *jmoran@mcguirewoods.com*
                                           *gsimmons@mcguirewoods.com*

## CORPORATE DISCLOSURE STATEMENT

API is an incorporated, not-for-profit trade association representing nearly 600 members involved in all segments of the oil and natural gas industry, including producers and exporters of liquefied natural gas (LNG). API has no parent corporation, and no publicly held company has a 10% or greater ownership interest in API.

AXPC is an incorporated, not-for-profit trade association representing 30 of the largest independent oil and natural gas exploration and production companies in the United States. AXPC has no parent corporation, and no publicly held company has a 10% or greater ownership interest in AXPC.

CLNG is an incorporated, not-for-profit trade association representing the full LNG value chain, including large-scale LNG export facilities in the United States, shippers, and multinational developers. CLNG has no parent corporation, and no publicly held company has a 10% or greater ownership interest in CLNG.

NGSA is an incorporated, not-for-profit trade association representing integrated and independent energy companies that produce, transport and market domestic natural gas. NGSA has no parent corporation, and no publicly held company has a 10% or greater ownership interest in NGSA.

LNG Allies is an incorporated, not-for-profit trade association representing LNG export project developers, upstream natural gas

producers, international oil and gas companies, liquefaction and regasification equipment makers, and engineering firms. LNG Allies has no parent corporation, and no publicly held company has a 10% or greater ownership interest in LNG Allies.

IPAA is an incorporated, not-for-profit trade association representing thousands of independent oil and natural gas producers and service companies across the United States. IPAA has no parent corporation, and no publicly held company has a 10% or greater ownership interest in IPAA.

TXOGA is an incorporated, not-for-profit trade association representing every facet of the Texas oil and gas industry including small independents and major producers. TXOGA has no parent corporation, and no publicly held company has a 10% or greater ownership interest in TXOGA.


Dated: October 28, 2024                    */s/ John S. Moran*
                                           John S. Moran
                                           Grace Greene Simmons
                                           MCGUIREWOODS LLP
                                           888 16th Street N.W., Suite 500
                                           Washington, D.C. 20006
                                           (202) 828-2817
                                           *jmoran@mcguirewoods.com*
                                           *gsimmons@mcguirewoods.com*


iv

## CERTIFICATE OF COUNSEL REGARDING SEPARATE BRIEFING

Pursuant to D.C. Circuit Rule 29(d), counsel states that the undersigned *amici* have joined together in a single brief to present their common views on the relevant legal issues and the effects of the panel's decision. While the undersigned *amici* are aware that other potential *amici* intend to seek leave to file in support of the petition for rehearing, counsel understands that those potential *amici* will raise different legal and policy issues, and from a different perspective, making a joint brief with those potential *amici* impracticable. The present *amici*—representing the full range of actors in the LNG industry—submit this brief to specifically explain the importance of LNG, to articulate how the panel misapplied the proper standard for vacatur, and to provide insight into the harms caused by vacatur to energy projects. In doing so, *amici* draw on the breadth and depth of their vast experience and unique perspectives.

Dated: October 28, 2024

*/s/ John S. Moran*
John S. Moran
Grace Greene Simmons
MCGUIREWOODS LLP
888 16th Street N.W., Suite 500
Washington, D.C. 20006
(202) 828-2817
*jmoran@mcguirewoods.com*
*gsimmons@mcguirewoods.com*

v

# TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES .......... i

CORPORATE DISCLOSURE STATEMENT ................................................. iii

CERTIFICATE OF COUNSEL REGARDING SEPARATE BRIEFING.......... v

TABLE OF AUTHORITIES ........................................................................ vii

GLOSSARY ................................................................................................. x

INTEREST OF AMICI CURIAE .................................................................. 1

INTRODUCTION AND SUMMARY ............................................................ 4

ARGUMENT ............................................................................................... 4

   I.  LNG IS IMPORTANT TO GLOBAL ENERGY NEEDS, THE
      DOMESTIC ECONOMY, AND NATIONAL SECURITY ...................... 4

   II.  THE PANEL FAILED TO ADDRESS THE DISRUPTIVE
       CONSEQUENCES OF VACATUR. ....................................................... 7

   III.THE PANEL ERRED IN FINDING THAT MINOR PERCEIVED
        PROCEDURAL DEFICIENCIES OUTWEIGHED THESE
        DISRUPTIVE CONSEQUENCES....................................................... 10

   IV. VACATUR WILL HAVE REVERBERATIONS FAR BEYOND THIS
       PARTICULAR PROJECT .................................................................. 13

CONCLUSION........................................................................................... 14

CERTIFICATE OF COMPLIANCE............................................................ 15

CERTIFICATE OF SERVICE.................................................................... 16

vi

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied-Signal, Inc. v. Nuclear Reg. Comm'n,*
988 F.2d 146 (D.C. Cir. 1993) ............................................................ 4, 7, 12

*Allina Health Servs. v. Sebelius,*
746 F.3d 1102 (D.C. Cir. 2014) ................................................................. 8

*Black Oak Energy, LLC v. FERC,*
725 F.3d 230 (D.C. Cir. 2013) .................................................................... 8

*Daimler Truck N.A. LLC v. EPA,*
737 F.3d 95 (D.C. Cir. 2013) .................................................................... 11

*Vecinos para el Bienestar de la Comunidad Costera v. FERC,*
6 F.4th 1321 (D.C. Cir. 2021) ............................................................... 9, 12

*Food & Water Watch v. FERC,*
28 F.4th 277 (D.C. Cir. 2022) .............................................................. 9, 11

*Healthy Gulf v. FERC,*
107 F.4th 1033 (D.C. Cir. 2024) ............................................................... 9

*Int'l Union, United Mine Workers of Am. v. Fed. Mine Safety & Health Admin.,* 920 F.2d 960 (D.C. Cir. 1990) ........................................ 7

*Marsh v. Oregon Nat'l Res. Council,*
490 U.S. 360 (1989) ................................................................................ 10

*Oglala Sioux Tribe v. U.S. Nuclear Regul. Comm'n,*
896 F.3d 520 (D.C. Cir. 2018) .................................................................. 12

*Sierra Club v. Nat'l Marine Fisheries Serv.,*
No. 20-cv-3060 (D. Md. Oct. 21, 2024) ................................................... 13

*Standing Rock Sioux Tribe v. Army Corps of Eng'rs,*
985 F.3d 1032 (D.C. Cir. 2021) ......................................................... 10, 11

## Other Authorities

*API Commends Court Decision to Prevent Oil and Gas
   Shutdown in Gulf of Mexico* (Oct. 21, 2024),
   https://tinyurl.com/49tkxtw2....................................................................14

API & Energy Ventures Analysis, *Impact Analysis of U.S.
   Natural Gas Exports on Domestic Natural Gas Pricing*
   (Mar. 2024), https://tinyurl.com/7xcdzhmn..................................... 5, 6

*NextDecade: Rio Grande LNG Work Progresses*, LNG Prime
   (May 10, 2024), https://tinyurl.com/dwsx5zs5;..................................... 8

PriceWaterhouseCooper, *Quantifying America's Economic &
   Energy Opportunity through LNG Exports* (Oct. 2024),
   https://bit.ly/3Un2evg ............................................................................. 5

*Project Financing*, Offshore Energy (Mar. 15, 2024),
   https://tinyurl.com/3fyuvab9.................................................................. 8

*Rio Grande LNG*, https://tinyurl.com/2uyn277k ...................................... 7

*Stand with Rio Grande LNG*, https://tinyurl.com/5h9r5msm ................... 5

U.S. Energy Info. Admin., *The United States Was the World's
   Largest Liquefied Natural Gas Exporter in 2023*, (Apr. 1,
   2024), https://bit.ly/3JEtwI3 ................................................................. 5

U.S. Energy Info. Admin., *Electric Power Sector CO2 Emissions
   Drop as Generation Mix Shifts from Coal to Natural Gas*
   (June 9, 2021), https://bit.ly/3Qocp0N................................................. 7

U.S. Energy Info. Admin., *Europe Was the Main Destination
   for U.S. LNG Exports in 2022* (Mar. 22, 2023),
   https://bit.ly/49Y4L4g........................................................................... 6

U.S. Energy Info. Admin, *The United States Remained the
   Largest Liquefied Natural Gas Supplier to Europe in 2023*
   (Feb. 29, 2024), https://bit.ly/4hthi4G ................................................. 6

White House, *Fact Sheet: United States and European
    Commission Announce Task Force to Reduce Europe's
    Dependence on Russian Fossil Fuels* (Mar. 25, 2022),
    https://tinyurl.com/29d2jabj.................................................................. 6

## GLOSSARY

As used herein,

**API** means American Petroleum Institute;

**AXPC** means American Exploration and Production Council

**CLNG** means Center for Liquified Natural Gas;

**EIS** means Environmental Impact Statement;

**FERC** means Federal Energy Regulation Commission;

**IPAA** means Independent Petroleum Association of America;

**LNG** means liquefied natural gas;

**LNG Allies** means United States Liquified Natural Gas Association;

**NEPA** means National Environmental Policy Act;

**NGL** means natural gas liquids;

**NGSA** means Natural Gas Supply Association;

**TXOGA** means Texas Oil and Gas Association.

**INTEREST OF AMICUS CURIAE**

The American Petroleum Institute (API), American Exploration and Production Council (AXPC), Center for LNG (CLNG), Natural Gas Supply Association, US LNG Association (LNG Allies), Independent Petroleum Association of America (IPAA), and Texas Oil and Gas Association (TXOGA) submit this *amici* brief in support of intervenors Rio Grande LNG, Rio Bravo Pipeline Company, and Texas LNG's petitions for rehearing.

API is a national trade association representing nearly 600 members involved in all segments of the oil and natural gas industry, including producers and exporters of liquefied natural gas (LNG). API harnesses its members' expertise to research and advocate for economically efficient and environmentally sound approaches to the production and supply of energy resources.

AXPC is a national trade association representing 30 of the largest independent oil and natural gas exploration and production companies in the United States. AXPC companies are leaders in the cleanest and safest onshore production of oil and natural gas, while supporting millions of Americans in high-paying jobs. Dedicated to safety, science, and technological advancement, AXPC's members strive to deliver affordable,

reliable energy while positively impacting the communities in which they live and operate.

CLNG advocates for public policies that advance the use of LNG in the United States, and its export internationally. A committee of the Natural Gas Supply Association (NGSA), CLNG represents the full LNG value chain, including large-scale LNG export facilities in the United States, shippers, and multinational developers, providing it with unique insight into the ways in which the vast potential of this abundant, clean, and versatile fuel can be fully realized.

Founded in 1965, NGSA represents integrated and independent energy companies that produce, transport and market domestic natural gas and is the only national trade association that solely focuses on producer-marketer issues related to the downstream natural gas industry. NGSA's members trade, transact, and invest in the U.S. natural gas market in a range of different manners. NGSA members transport and/or supply billions of cubic feet of natural gas per day on interstate pipelines.

LNG Allies is a national trade association representing LNG export project developers, upstream natural gas producers, international oil and gas companies, liquefaction and regasification equipment makers, and engineering firms. LNG Allies helps its members advance sound public

policies and bring the economic, environmental, and geostrategic benefits of US LNG to the world.

IPAA is a national upstream trade association representing thousands of independent oil and natural gas producers and service companies across the United States. Independent producers develop 91 percent of the nation's oil and natural gas wells. These companies account for 83 percent of America's oil production, 90 percent of its natural gas and natural gas liquids (NGL) production, and support over 4.5 million American jobs.

TXOGA is a statewide trade association representing every facet of the Texas oil and gas industry including small independents and major producers. Collectively, the membership of TXOGA produces approximately 90 percent of Texas' crude oil and natural gas and operates the vast majority of the state's refineries and pipelines. In fiscal year 2023, the Texas oil and natural gas industry supported over 480,000 direct jobs and paid $26.3 billion in state and local taxes and state royalties, funding our state's schools, roads and first responders.

*Amici* have significant interests in proper application of this Court's precedents to LNG pipeline and terminal projects.

## INTRODUCTION & SUMMARY

LNG is a lower carbon fuel source essential to national and global energy needs. FERC authorized Rio Grande and Texas LNG to operate export terminals, and Rio Bravo to operate a pipeline. The panel, nitpicking perceived procedural issues, took the drastic step of vacating those authorizations. This contradicts this Court's precedent, conflicts with other circuits, and discourages future LNG and other energy projects.

Vacatur turns on both "the disruptive consequences" threatened and "the seriousness of the order's deficiencies." *Allied-Signal, Inc. v. Nuclear Reg. Comm'n*, 988 F.2d 146, 150 (D.C. Cir. 1993). The panel misapplied both prongs, failing to acknowledge the serious consequences of vacatur, much less justify how the minor perceived procedural issues here warranted such disruption. This misapplication threatens the certainty required to develop LNG and other energy infrastructure projects and undermines efforts to meet global energy needs.

## ARGUMENT

## I.  LNG IS IMPORTANT TO GLOBAL ENERGY NEEDS, THE DOMESTIC ECONOMY, AND NATIONAL SECURITY.

LNG is a reliable energy source used to heat and power homes and businesses, both domestically and abroad.

LNG contributes significantly to the domestic economy. The United States is the world's largest producer and exporter of LNG,[2] "reaching a historical high of 11.9 billion cubic feet per day … in 2023."[3] The domestic LNG market directly supports over 25,000 jobs and indirectly supports over 200,000 jobs annually.[4] The Rio Grande project alone "currently employs approximately 1,700 workers with that number climbing to 5,000 in the coming years."[5] LNG also leads to significant capital expenditures and economic output, boosting GDP last year by nearly $44 billion.[6] These projects do not impact the affordability of domestic energy; "[d]espite U.S. natural gas exports and domestic consumption reaching all-time highs in recent years, domestic residential natural gas prices remained among the lowest in the world."[7]

---

[2] U.S. Energy Info. Admin., *The United States Was the World's Largest Liquefied Natural Gas Exporter in 2023*, (Apr. 1, 2024), https://bit.ly/3JEtwI3.

[3] PriceWaterhouseCooper, *Quantifying America's Economic & Energy Opportunity through LNG Exports* at 2 (Oct. 2024), https://bit.ly/3Un2evg.

[4] *Id.* at 2, 6.

[5] Stand with Rio Grande LNG, https://tinyurl.com/5h9r5msm.

[6] PriceWaterhouseCooper 2.

[7] API & Energy Ventures Analysis, *Impact Analysis of U.S. Natural Gas Exports on Domestic Natural Gas Pricing* 3 (Mar. 2024), https://tinyurl.com/7xcdzhmn.

LNG also aids allies abroad and enhances national security. Before recent growth in U.S. LNG exports, European allies relied primarily on Russian natural gas. Russia's invasion of Ukraine threatened the energy sources of Ukraine and other allies, leading to a "joint Task Force to reduce Europe's dependence on Russian fossil fuels and strengthen European energy security."[8] That year, the United States increased LNG exports to Europe by over 140%,[9] and LNG exports remain important to Europe.[10] These exports help stabilize global energy markets and provide allies a steady and lower carbon energy supply.

Further, LNG helps reduce carbon emissions. LNG is markedly cleaner than coal. Domestically, 65% of the reduction in $CO_2$ emissions since 2005 is attributable to the shift from coal to natural gas.[11] Abroad, U.S. natural gas frequently replaces coal, shifting energy production to a lower carbon source.

---

[8] White House, *Fact Sheet: United States and European Commission Announce Task Force to Reduce Europe's Dependence on Russian Fossil Fuels* (Mar. 25, 2022), https://tinyurl.com/29d2jabj.

[9] U.S. Energy Info. Admin., *Europe Was the Main Destination for U.S. LNG Exports in 2022* (Mar. 22, 2023), https://bit.ly/49Y4L4g.

[10] U.S. Energy Info. Admin, *The United States Remained the Largest Liquefied Natural Gas Supplier to Europe in 2023* (Feb. 29, 2024), https://bit.ly/4hthi4G.

[11] U.S. Energy Info. Admin., *Electric Power Sector $CO_2$ Emissions Drop as Generation Mix Shifts from Coal to Natural Gas* (June 9, 2021), https://bit.ly/3Qocp0N.

The two LNG projects at issue here promise these immense benefits. Once operational, the pending terminals will export tens of millions of tons of LNG annually. Rio Grande alone "will deliver enough energy to heat and cool the equivalent of nearly 34 million U.S. households annually."[12] Delaying these projects harms not only American business but also domestic consumers and allies abroad.

## II.   THE PANEL FAILED TO ADDRESS THE DISRUPTIVE CONSEQUENCES OF VACATUR.

The panel improperly brushed aside the problems caused by vacating these LNG projects. Vacatur can have immensely "disruptive consequences." *Allied-Signal*, 988 F.2d at 150. This Court thus "commonly remand[s] without vacating an agency's rule or order." *Int'l Union, United Mine Workers of Am. v. Fed. Mine Safety & Health Admin.*, 920 F.2d 960, 966 (D.C. Cir. 1990). Rather than suffer "the disruptive consequences of an interim change that may itself be changed," *id.* at 967, it is better "to preserve the status quo" and avoid "significant transaction costs" and other harms as the agency redoes its analysis, *Black Oak Energy, LLC v. FERC*, 725 F.3d 230, 244 (D.C. Cir. 2013); *see Allina Health Servs. v. Sebelius*, 746 F.3d 1102,

---

[12] *Rio Grande LNG*, https://tinyurl.com/2uyn277k.

1110-11 (D.C. Cir. 2014) (sometimes "the egg has been scrambled, and it is too late to reverse course").

Vacatur is particularly disruptive for energy projects. LNG projects are massive in scope and demand years of planning and investment. FERC authorization is an important turning point—a trigger for construction, additional financing, and customer contracts. Here, FERC authorized these projects in 2019 and reauthorized them in 2023. The projects received billions in financing. Rio Bravo has spent over $250 million on its pipeline and "executed another $200 million in binding agreements." Rio Bravo Reh'g Br. 6, No. 23-1174. Construction on Rio Grande began last year, and Texas LNG was expected to begin construction this year.[13] Rio Grande "has executed numerous binding, long-term LNG offtake agreements with commercial counterparties." Rio Grande Br. 39, No. 23-1174. Texas LNG likewise has contracted with at least one customer. Texas LNG Br. 37, No. 23-1175. In all, these projects "have invested billions of dollars in reliance on FERC's authorizations." Rio Grande Br. 39.

---

[13] *NextDecade: Rio Grande LNG Work Progresses*, LNG Prime (May 10, 2024), https://tinyurl.com/dwsx5zs5; Aida Ĉuĉuk, *Texas LNG Advances to Execution Phase of Project Financing*, Offshore Energy (Mar. 15, 2024), https://tinyurl.com/3fyuvab9.

In vacating the authorizations, the panel threw these important projects into disarray. Once the mandates issue, construction presumably must stop, leaving hundreds without a job. Financing comes into question, and projects may face loan defaults. Such delay reverberates through contractors, producers, suppliers, and customers, domestically and abroad, as parties reshuffle contracts and schedules for construction and production.

The prior panel recognized that "vacating the orders would needlessly disrupt completion of the projects." *Vecinos para el Bienestar de la Comunidad Costera v. FERC*, 6 F.4th 1321, 1332 (D.C. Cir. 2021). Indeed, this Court has routinely refused to vacate similar projects. *See Food & Water Watch v. FERC*, 28 F.4th 277, 292 (D.C. Cir. 2022) (vacating order "mid-construction" would be "quite disruptive") (quotation omitted); *Healthy Gulf v. FERC*, 107 F.4th 1033, 1047-48 (D.C. Cir. 2024) (refusing to disrupt "construction plans and commercial operations," where "the company ha[d] executed a binding, 20-year contract for the supply of 2 million tons per year") (quotation omitted).

The panel gave short shrift to these significant reliance interests, cursorily noting that vacatur "may" cause "significant disruption." Op. at 34. But vacatur is *certain* to cause significant disruption, both upstream and downstream. The panel's cursory treatment of those consequences falls far

9

short of this Court's obligation to "consider[] all important aspects of" vacatur. *Standing Rock Sioux Tribe v. Army Corps of Eng'rs*, 985 F.3d 1032, 1053 (D.C. Cir. 2021).

### III.  THE PANEL ERRED IN FINDING THAT MINOR PERCEIVED PROCEDURAL DEFICIENCIES OUTWEIGHED THESE DISRUPTIVE CONSEQUENCES.

Sidestepping the consequences, the panel suggested that any effects were warranted by the magnitude of FERC's purported procedural deficiencies. There too the panel erred.

FERC did not misstep. ***First***, FERC properly concluded that its additional environmental-justice analysis did not require a supplemental EIS. Supplemental EISs are required only where the agency finds additional "significant" impacts. *Marsh v. Oregon Nat'l Res. Council*, 490 U.S. 360, 374 (1989). There were no such impacts here, so a supplemental EIS was unnecessary. The panel's contrary conclusion contradicts the precedent of this Court and other circuits. Rio Grande Reh'g Br. 7-10; Texas LNG Reh'g Br. 8-13; Rio Bravo Reh'g Br. 12-16. ***Second***, FERC reasonably exercised discretion in considering the later-proposed carbon-capture-sequestration (CCS) system separately; it was introduced six years after the terminal proposal, and the terminal had independent utility. Rio Bravo Reh'g Br. 16-18; Rio Grande Reh'g Br. 20.

At any rate, these alleged deficiencies are minor. They do not go to the core of the project. The panel never questioned FERC's conclusion that the projects are in the public interest, or that the only significant environmental impacts were visual effects. Nor do these supposed procedural deficiencies undermine the agency's decision-making process. FERC did not refuse to prepare an EIS, *cf. Standing Rock*, 985 F.3d at 1052-53, or neglect important criteria, *cf. Food & Water Watch*, 28 F.4th 287-89, or fail to give the public a meaningful opportunity to comment, *cf. Daimler Truck N.A. LLC v. EPA*, 737 F.3d 95, 270 (D.C. Cir. 2013). To the contrary, FERC prepared a 2,300-page EIS, thoroughly reviewed environmental-justice issues in a 31-mile radius, produced additional analysis on those issues, and provided opportunities for public comment on FERC's data and Rio Grande's response. The sole misstep, according to the panel, is that FERC did not set aside an additional comment period—even though the public could seek rehearing and continue to submit comments. Likewise, for the CCS proposal, FERC simply chose to consider the later-proposed system in a separate proceeding. If anything, the panel's decision disincentivizes project sponsors from even considering options like CCS lest they later be cited against the project.

Neither of these purported deficiencies casts "doubt" on "whether the agency chose correctly" in authorizing the terminals, pipelines, and related facilities. *Allied-Signal*, 988 F.2d at 150. The panel never suggested otherwise, reasoning instead that FERC could not explain its procedural choices. But that is the wrong test. Rio Grande Reh'g Br. 14-17; Texas LNG Reh'g Br. 13-17. As the prior panel recognized, the correct test is whether the agency can remedy the deficiencies "while reaching the same result." *Vecinos*, 6 F.4th at 1332. Just as FERC redressed prior procedural missteps and still reauthorized these terminals, *id.*, so too can it redress these even-less-significant missteps and reach the same result.

Most importantly, the panel failed to explain how these minor deficiencies warrant the immense disruption of vacatur. *See Oglala Sioux Tribe v. U.S. Nuclear Regul. Comm'n*, 896 F.3d 520, 538 (D.C. Cir. 2018) (refusing to vacate order despite "the seriousness of the order's deficiencies" because of "the disruptive consequences of vacating the license while the agency proceeds to satisfy NEPA"). Significant disruption demands significant error. There is no such error here. And even if there were, the panel has not justified punishing Rio Grande, Rio Bravo, and Texas LNG (or other interested parties upstream and downstream) for minor procedural issues over which they had no control.

12

## IV.  VACATUR WILL HAVE REVERBERATIONS FAR BEYOND THIS PARTICULAR PROJECT.

Vacatur of authorization for these LNG export terminals sets a dangerous precedent that could discourage essential energy projects.[14] Energy projects have long timelines and demand massive investment. Last-minute vacatur of authorization could grind these projects to a halt, leaving suppliers and customers scrambling. This is not unique to the projects here, and other courts have recognized the importance of avoiding such immense disruptions. *See, e.g., Sierra Club v. Nat'l Marine Fisheries Serv.*, No. 20-cv-3060 (D. Md. Oct. 21, 2024) (delaying vacatur of agency's biological opinion by nearly six months to give agency time to remedy alleged errors without causing devastating interruptions to exploration and production in the Gulf).[15] The vacaturs of these LNG projects—coming last minute, at no fault of the private parties, after infrastructure was built and billions of dollars spent—discourages the investments needed for energy infrastructure.

---

[14] *Amici* recognize there is some uncertainty about the scope of the vacatur and would support any decision that construes it to apply only to reauthorization. Even if only the reauthorizations have been vacated, that vacatur still will cause "significant disruption." Rio Bravo Reh'g Br. 8.

[15] *API Commends Court Decision to Prevent Oil and Gas Shutdown in Gulf of Mexico* (Oct. 21, 2024), https://tinyurl.com/49tkxtw2.

13

## CONCLUSION

For the foregoing reasons, this Court should grant rehearing and reverse the vacatur of these authorizations.

Dated: October 28, 2024

*/s/ John S. Moran*
John S. Moran
Grace Greene Simmons
MCGUIREWOODS LLP
888 16th Street N.W., Suite 500
Washington, D.C. 20006
(202) 828-2817
*jmoran@mcguirewoods.com*
*gsimmons@mcguirewoods.com*

## CERTIFICATE OF COMPLIANCE

This brief contains 2,584 words and was prepared using 14-point Georgia, a proportionally spaced font.

*/s/ John S. Moran*
John S. Moran

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2024, I electronically filed the foregoing document using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

*/s/ John S. Moran*
John S. Moran