Nos. 23-1174, 23-1175, 23-1221, 23-1222

## IN THE

# United States Court of Appeals for the District of Columbia Circuit

CITY OF PORT ISABEL, ET AL.,

*Petitioners,*

*v.*

FEDERAL ENERGY REGULATORY COMMISSION,

*Respondent,*

RIO BRAVO PIPELINE COMPANY, LLC; RIO GRANDE LNG, LLC; TEXAS LNG BROWNSVILLE, LLC

*Intervenors for Respondent.*

On Petition for Review of Orders of the Federal Energy Regulatory Commission

## INTERVENORS RIO GRANDE LNG, LLC, RIO BRAVO PIPELINE COMPANY, LLC AND TEXAS LNG BROWNSVILLE, LLC'S JOINT REPLY IN SUPPORT OF PETITIONS FOR REHEARING OR REHEARING EN BANC

Jeremy C. Marwell
Matthew X. Etchemendy
James T. Dawson
VINSON & ELKINS LLP
2200 Pennsylvania Ave., NW
Suite 500 West
Washington, DC 20037
(202) 639-6507

James D. Seegers
VINSON & ELKINS LLP
845 Texas Ave.
Suite 4700
Houston, TX 77002

*Counsel for Intervenor Rio Bravo Pipeline Company, LLC*

Varu Chilakamarri
David L. Wochner
K&L Gates LLP
Washington, DC 2006
(202) 778-9165

Michael R. Pincus
Paul Korman
Mosby Perrow
VAN NESS FELDMAN, LLP
2000 Pennsylvania Ave., NW
Washington, DC 20006
(202) 298-1800

*Counsel for Intervenor Texas LNG Brownsville, LLC*

Robert M. Loeb
ORRICK, HERRINGTON & SUTCLIFFE LLP
2100 Pennsylvania Ave., NW
Washington, DC 20037
(202) 339-8400

Paul D. Clement
Matthew D. Rowen
Kevin Wynosky
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314

*Counsel for Intervenor Rio Grande LNG, LLC*

*Additional Counsel*

Lisa M. Tonery
Andrew D. Silverman
Emily Villano
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019

Geoffrey C. Shaw
Elizabeth A. Bixby
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
355 S. Grand Avenue, Ste. 2700
Los Angeles, CA 90071

*Counsel for Intervenor Rio Grande LNG, LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................ii

INTRODUCTION AND SUMMARY ..................................................... 1

ARGUMENT .................................................................................... 3

I.    Petitioners' Response Cannot Sidestep The Conflicts On The
      Standard For Requiring An SEIS. ................................................ 3

II.   Rio Grande Did Not Waive Its Objection To Vacatur Based
      On Purported Minor Environmental Justice Errors Because
      There Had Never Been A Previous Vacatur In This Case. ............ 7

III.  *Marin Audubon* Redoubles The Need For Rehearing En
      Banc In This Case. ..................................................................... 8

IV.   Rehearing Is Necessary To Resolve Conflicts In The Court's
      Vacatur Caselaw. ..................................................................... 10

V.    Petitioners' Response Makes Clear That, At A Minimum,
      This Court Must Clarify That The Original 2019
      Authorization Remains Valid. .................................................. 13

CONCLUSION ............................................................................... 15

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Pub. Gas Ass'n v. United States Dep't of Energy,*
 72 F.4th 1324 (D.C. Cir. 2023) ........................................................... 14

*Comcast Corp. v. FCC,*
 579 F.3d 1 (D.C. Cir. 2009) ................................................................ 14

*Friends of the River v. FERC,*
 720 F.2d 93 (D.C. Cir. 1983) ........................................................... 6, 7

*Marin Audubon Soc'y v. Fed. Aviation Admin.,*
 121 F.4th 902 (D.C. Cir. 2024).................................................. 1, 2, 8, 9

*Marsh v. Or. Nat. Res. Council,*
 490 U.S. 360 (1989).............................................................................. 3

*Rio Grande LNG, LLC,*
 183 FERC ¶ 61,046 (2023) ................................................................. 13

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs,*
 985 F.3d 1032 (D.C. Cir. 2021) ..................................................... 10, 11

*U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.,*
 508 U.S. 439 (1993) ............................................................................. 8

**Statutes & Regulations**

15 U.S.C. § 717r ....................................................................................... 14

15 U.S.C. § 717r(b) .................................................................................. 13

42 U.S.C. § 4332(2)(C) ............................................................................... 3

18 C.F.R. § 380.1 ..................................................................................... 10

**Other Authorities**

Gov't's PFREB, *Marin Audubon*, No. 23-1067 (D.C. Cir. Dec. 5, 2024) ................................................................................................ 8

Petitioners' PFREB, *Marin Audubon*, No. 23-1067 (D.C. Cir. Nov. 27, 2024) ...................................................................................... 8

Transcript of Oral Argument, *Seven County Infrastructure Coalition v. Eagle County*, No. 23-975 (Dec. 10, 2024) .................... 1, 6

## INTRODUCTION AND SUMMARY

In the weeks since Intervenors Rio Grande LNG, LLC, Rio Bravo Pipeline Company, LLC, and Texas LNG Brownsville, LLC filed their rehearing en banc petitions, the case for rehearing has only grown stronger.[1]  First and foremost, FERC itself joined the chorus of voices calling for rehearing, fully agreeing with Intervenors that the panel opinion deviates from NEPA's standards and ushers in a near-automatic vacatur regime for NEPA errors, however trivial.  Second, the Supreme Court's recent oral argument in *Seven County Infrastructure Coalition v. Eagle County* underscored the broad concern regarding what the Deputy Solicitor General labeled "flyspecking" in the application of NEPA by this Court.  *E.g.*, Transcript of Oral Argument at 69:2-6, No. 23-975 (Dec. 10, 2024).

Petitioners also struggle to avoid the obvious consequences of *Marin Audubon Soc'y v. Fed. Aviation Admin.*, 121 F.4th 902 (D.C. Cir. 2024), which undermines the panel's improper use of non-statutory environmental justice requirements.  Petitioners' claim that FERC has

---

[1] This Joint Reply is being filed concurrently in each of the above captioned dockets.

adopted the CEQ environmental justice guidance as their own binding regulations is obviously incorrect.  In fact, FERC itself suggests that the Court should, at a minimum, hold this case until it decides the pending rehearing petition in *Marin Audubon*.  Moreover, Petitioners' argument that Rio Grande waived this argument is ironic in light of *Marin Audubon*'s decision to reach this issue *sua sponte*.  Indeed, this case is a superior vehicle to resolve the CEQ issue because here, in contrast to *Marin Audubon,* at least one of the parties raised the issue and stands ready to defend the panel's conclusion in *Marin Audubon*.  Finally, Petitioners cannot sidestep the reality that the panel's vacatur order splits from long-established law governing applicable remedies.  And on the ambiguity of the scope of the vacatur ordered here, Petitioners essentially concede that clarification is required, and they cannot explain how the panel would have jurisdiction to order a full vacatur here.  All told, Petitioners' response only underscores the need for further review.

## ARGUMENT

### I. Petitioners' Response Cannot Sidestep The Conflicts On The Standard For Requiring An SEIS.

As FERC now agrees, this case merits rehearing because, *inter alia*, FERC's environmental analysis was more than sufficient, and this Court's demand for a SEIS was both wrong and in conflict with the approach of other circuits. A new SEIS is not required here because the new information obtained on remand revealed no new significant impacts. *E.g.*, RGPFREB 8-10; TXPFREB 5-7. Under the plain statutory text and *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 371 (1989), NEPA only mandates an EIS or SEIS for actions that "*significantly* affect[] the quality of the human environment." 42 U.S.C. § 4332(2)(C) (emphasis added).

In fact, as FERC explains in its response in support of the en banc petitions, the expanded analysis on remand revealed no new impacts whatsoever: all of the impacts on air quality, wetlands, recreation, subsistence fishing, etc., that would be experienced between 2 and 31 miles of the project had already been studied in the original EIS. FERC Br. 6-7. The only new information FERC gathered on remand was information about the *demographic composition* of the communities

3

subject to those impacts. *See* FERC Br. 15. Such information cannot trigger a SEIS under the statute or *Marsh* because it provides no insight into how the project "affect[s] the quality of the human environment." *See* FERC Br. 14-15; RGPFREB 9; TXPFREB 10-11.

Petitioners do not dispute that FERC had already studied each of the environmental impacts borne by communities living between 2 and 31 miles of the project in the original EIS. Petitioners further acknowledge that those "impacts would not … be significant." Opp. 8. Yet Petitioners insist that a SEIS was required because FERC purportedly reached a "new conclusion" about whether EJ communities would suffer "disproportionately high and adverse impacts." Opp. 7-8 (alteration omitted). But again, a "new conclusion" about the demographics of communities subject to *previously studied* impacts cannot trigger a SEIS, because it reveals no new significant environmental impacts. *See supra* 3. Petitioners make no effort to reconcile their standard for a SEIS with the statute or *Marsh*.

It is also simply inaccurate to say that FERC reached a "new conclusion" about whether "impacts to environmental justice communities would be disproportionately high and adverse" following

the remand.  *Contra* Opp. 8 (incorrectly asserting that "FERC had previously concluded that they would not be").  As FERC explains, it "reached the same conclusion" about impacts on EJ communities both times:  The only significant impacts of the project would be visual ones, which would be *entirely* borne by EJ communities residing within a 2-mile radius of the project.  FERC Br. 9-10.  After FERC expanded its EJ analysis from 2 to 31 miles, FERC recognized that the project also impacts non-EJ communities—meaning EJ communities suffered not exclusively, but *disproportionately*.  *Id.*  The difference is semantic, not substantive.  The substance of FERC's conclusion did not change; FERC had already considered that EJ communities would bear the brunt of the project's minimal adverse visual impacts.  *Accord* RBPFREB 13-15.

Significantly, Petitioners nowhere argue that a SEIS is necessary because it could lead FERC to a different outcome.  Nor could they:  Again, Petitioners make no argument that the expanded EJ analysis revealed significant new environmental impacts that would put reauthorization of the Intervenors' projects into doubt.  Indeed, Petitioners appear to accept the remand process might be "pointless." Opp. 11.

5

Nevertheless, Petitioners maintain that the doctrine of harmless error cannot apply here, because in their view further process serves "other purposes": namely, a "springboard for public comment." Opp. 11 (quotation marks omitted). But as FERC explains, Petitioners had in total *137* days—three times the 45-day SEIS comment period—to comment on the emissions data, and had ample opportunity to comment on FERC's analysis of that data during the rehearing process. FERC Br. 16. The only possible "point" of the further process that Petitioners have identified, therefore, has *already* been served by the process FERC provided below. And in all events, as Justice Kagan recently emphasized at argument, a remand designed only to serve as "springboard[s] for public comment" is not what NEPA is "all about." Transcript of Oral Argument at 86:18-87:3, *supra.*

To vacate the reauthorization and force FERC to undergo yet more process here would not only be inappropriately "punitive," it would also plainly conflict with this Court's opinion in *Friends of the River v. FERC*, 720 F.2d 93, 106-07 (D.C. Cir. 1983). Petitioners weakly protest that *Friends of the River* did not consider the potential for public comment to impact FERC's analysis. Opp. 11-12. But that is wrong.

The dissent in *Friends of the River* vigorously argued exactly that

point—that FERC violated NEPA by failing to allow and respond to

comments—to no avail.  720 F.2d at 122-24 (Bazelon, J., dissenting).

In sum, Petitioners do nothing to resolve the numerous inter- and

intracircuit conflicts posed by the panel decision.

## II. Rio Grande Did Not Waive Its Objection To Vacatur Based On Purported Minor Environmental Justice Errors Because There Had Never Been A Previous Vacatur In This Case.

Petitioners claim that Rio Grande waived the argument that it is

extra-statutory and thus improper to use supposed flaws in the

environmental justice analysis as a basis to vacate project

reauthorization by not raising it earlier.  Opp. 2-3.  This is incorrect.

Rio Grande had no reason to make this argument until the panel

deployed that analysis to vacate project reauthorization.[2]  As stated in

Rio Grande's Petition (at 14), Rio Grande does not object to FERC

*considering* environmental justice or collecting relevant information for

the CEQ, as demonstrated by prior actions like "providing demographic

---

[2] The statutory authority argument was not relevant to *Vecinos*—which did not vacate authorization or consider a denial of authorization—or to any other stage in the case before the panel's decision.  *Contra* Opp. 4-5.

information," Opp. 5.  But, without a statutory basis, purported flaws in the environmental justice analysis cannot be used by FERC to *deny* project authorization or by a court to *vacate* project authorization.

Thus, Rio Grande made that argument at the proper time—as soon as it became an issue in the case.  *See* RGPFREB 13-14.  Moreover, as explained in *Marin Audubon*, the Court "retain[s] the independent power to identify and apply the proper construction of governing law" regardless of party presentation, "and that is especially true when 'the proper construction is that a law does not govern because it is not in force' or is not legally binding."  *Marin Audubon*, 121 F.4th at 909 (quoting *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 446 (1993)) (considering validity of CEQ regulations where no party raised the issue).

## III.  *Marin Audubon* Redoubles The Need For Rehearing En Banc In This Case.

It is unquestionable that the status of the CEQ regulations is an important developing issue in this Court.  *See Marin Audubon*, 121 F.4th 902; Gov't's PFREB, *Marin Audubon*, No. 23-1067 (D.C. Cir. Dec. 5, 2024); Petitioners' PFREB, *Marin Audubon*, No. 23-1067 (D.C. Cir. Nov. 27, 2024).  These developments provide additional reason to grant

en banc review in this case. *See* Rio Grande 28(j) Letter Re: *Marin Audubon* (Nov. 13, 2024); Texas LNG 28(j) Letter Re: *Marin Audubon* (Nov. 19, 2024).

FERC does not dispute that the panel's conclusion is impossible to square with *Marin Audubon*, though it suggests that the Court may consider holding this petition pending the resolution of *Marin Audubon*. FERC Br. 6. Intervenors certainly agree that a hold would be the bare minimum that is justified here. But in reality, if this Court decides to consider the status of the CEQ regulations en banc, *this* case is a far better vehicle to address the issue. That is because no party in *Marin Audubon* has taken the position that the CEQ regulations are non-binding. *See Marin Audubon*, 121 F.4th at 909. Here, the parties squarely contest the validity and application of CEQ regulations as grounds for vacatur or denial of project authorization and will present the issue cleanly for en banc review, and FERC is well positioned to represent the government on that question.

Only Petitioners try to argue that *Marin Audubon* is not relevant because FERC "adopted CEQ's regulations" for itself. Opp. 2. In truth, FERC simply stated that it "will comply with the regulations of the

Council on Environmental Quality except where those regulations are inconsistent with the statutory requirements of the Commission." 18 C.F.R. § 380.1. If those regulations are *ultra vires*, there is nothing for FERC to voluntarily comply with. Moreover, nothing in FERC's regulations encodes CEQ's environmental justice guidelines as necessary prerequisites for project authorization: FERC did not transplant the CEQ environmental justice guidance into its project authorization process or establish that inconsistency with that guidance would invalidate an otherwise lawful authorization. As a result, *Marin Audubon*'s holding that the CEQ regulations are invalid sweeps away any basis for invalidating project authorization based on environmental justice considerations here. *See* Rio Grande 28(j) Letter, *supra*; Texas LNG 28(j) Letter, *supra*.

## IV. Rehearing Is Necessary To Resolve Conflicts In The Court's Vacatur Caselaw.

Petitioners try to defend the panel's vacatur ruling by arguing that the panel somehow faithfully "applied, rather than departed from, *Allied-Signal*." Opp. 13. But as explained in the en banc petitions, the panel did not apply the *Allied-Signal* factors. E.g., RGPFREB 16-18; TXPFREB 13-16. Instead, citing *Standing Rock Sioux Tribe v. U.S.*

10

*Army Corps of Eng'rs*, 985 F.3d 1032, 1052 (D.C. Cir. 2021), the panel

held that vacatur is automatically warranted whenever FERC bypasses

a "fundamental procedural step" like preparing a supplemental EIS, no

matter how likely FERC is to reach the same ultimate result on remand

and no matter how catastrophic that remedy will be in the meantime.

RGPFREB 15-21 (quotation marks omitted); *see* Op. 33-34.

    That holding drastically alters the Court's precedent and vacatur

practice. *Accord* FERC Br. at 19-21. Petitioners try to downplay this

egregious error by arguing that the panel's rule *might* not result in

vacatur *every* time FERC "skip[s]" a trivial "procedural step." Opp. 15.

But they provide no reason to believe that the panel's opinion does not

usher in a regime in which the Court almost always vacates when it

finds a NEPA violation—squarely displacing the long-established

precedent of carefully weighing both *Allied-Signal* factors and assigning

a case-specific remedy. Petitioners also note that the Court did not

rehear *Standing Rock* en banc. Opp. 14. But it was not clear then how

*Standing Rock* would interact with *Allied-Signal* going forward. The

panel's decision here shows that *Standing Rock*'s interaction with

*Allied-Signal* now urgently requires clarification—as FERC itself agrees.

Moreover, Petitioners effectively concede that if the panel had applied the traditional *Allied-Signal* test, it would have remanded without vacatur. As discussed above (*supra* 5-6), Petitioners nowhere contest that Intervenors' projects must be authorized on remand because they serve the public interest. RGPFREB 20-21; RBPFREB 9-10; TXPFREB 7, 13. At most, Petitioners suggest that the panel lacked the "confiden[ce]" to determine that further comment might not have an "impact[]" on FERC's analysis. Opp. 16-17. But that is not the test; the question is whether the agency is likely to reach the same outcome on remand, not whether the further process could conceivably have some indeterminate impact. *See* RGPFREB 15-18. Petitioners likewise do not contest that vacatur threatens the very viability of the projects—with extremely devastating consequences. *See* RGPFREB 3-4, 21-22; TXPFREB 13-16. Again, that underlines the staggering importance of clarifying the proper remedy here.

**V.    Petitioners' Response Makes Clear That, At A Minimum, This Court Must Clarify That The Original 2019 Authorization Remains Valid.**

Petitioners have no meaningful response to Intervenors' explanation that the panel lacked jurisdiction under the Natural Gas Act to vacate the original 2019 project authorization, as opposed to merely the reauthorization order identified in the Petition for Review. *See* RGPFREB 22; TXPFREB 16.  And Petitioners do not dispute (and thus concede) that they never challenged, and so the panel had no occasion to find error in or vacate, the Remand Order's environmentally-beneficial pipeline amendments.  RBPFREB 11-12.

Petitioners' suggestion that the panel adjust its opinion to equitably preclude further construction, Opp. 21-22, is barred because Petitioners never made such a request to FERC on rehearing or to the Court at any previous stage of this case.  *See* 15 U.S.C. § 717r(b).  Nor would there be any support for such a request.  As FERC explained in the reauthorization order, "the Court's remand" in *Vecinos* was "limited to two issues" only; FERC stated that it "will not consider arguments that relitigate the Authorization Order" because "all other issues are collateral attacks on [that order]."  *Rio Grande LNG, LLC*, 183 FERC ¶

13

61,046, 61,277 & n.80 (2023). "Modifying" FERC's carefully calibrated reauthorization order in a way that undermines the original authorization and orders a halt to Rio Grande's construction—which FERC expressly avoided—would thus be highly improper. In any event, Petitioners' argument only underscores that the panel opinion did not displace the underlying authorization. Instead, it examined and set aside only the reauthorization order, consistent with the petition for review and Petitioners' presentation of the issues.

Petitioners give two examples of this Court vacating "both the action taken on remand *and* initially-remanded decision." Opp. 20-21. But in both cases, the Court's review occurred under the Administrative Procedure Act—not the NGA—and involved the vacatur of final rules rather than project authorizations. *Am. Pub. Gas Ass'n v. United States Dep't of Energy*, 72 F.4th 1324, 1336 (D.C. Cir. 2023); *Comcast Corp. v. FCC,* 579 F.3d 1, 9 (D.C. Cir. 2009). These cases are therefore not relevant and do not displace Rio Grande's simple argument that 15 U.S.C. § 717r limits this Court's jurisdiction when it examines FERC project authorizations to the scope of the petition for review, which here was limited to the reauthorization order and did not name the original

14

authorization.  RGPFREB 22.  Accordingly, if the Court denies en banc review, the panel should at a minimum clarify that the projects' original authorization orders remain in force and that any vacatur does not extend to the Remand Order's pipeline amendments.

## CONCLUSION

For the foregoing reasons, and those set out in the petitions, the Court should grant rehearing or rehearing en banc.

Respectfully submitted,

/s/ Jeremy C. Marwell
Jeremy C. Marwell
Matthew X. Etchemendy
James T. Dawson
VINSON & ELKINS LLP
2200 Pennsylvania Ave., NW
Suite 500 West
Washington, DC 20037
(202) 639-6507

James D. Seegers
VINSON & ELKINS LLP
845 Texas Ave.
Suite 4700
Houston, TX 77002

Counsel for Intervenor Rio Bravo
Pipeline Company, LLC

/s/ Robert M. Loeb
Robert M. Loeb
ORRICK, HERRINGTON &
    SUTCLIFFE LLP
2100 Pennsylvania Ave., NW
Washington, DC  20037
(202) 339-8400

Lisa M. Tonery
Andrew D. Silverman
Emily Villano
ORRICK, HERRINGTON &
    SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019

*/s/ Varu Chilakamarri*
Varu Chilakamarri
David L. Wochner
K&L Gates LLP
Washington, DC 2006
(202) 778-9165

Michael R. Pincus
Paul Korman
Mosby Perrow
VAN NESS FELDMAN, LLP
2000 Pennsylvania Ave., NW
Washington, DC 20006
(202) 298-1800

*Counsel for Intervenor Texas
LNG Brownsville, LLC*

Paul D. Clement
Matthew D. Rowen
Kevin Wynosky
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314

Geoffrey C. Shaw
Elizabeth A. Bixby
ORRICK, HERRINGTON &
    SUTCLIFFE LLP
355 S. Grand Avenue, Ste. 2700
Los Angeles, CA 90071

*Counsel for Intervenor Rio Grande
LNG, LLC*

16

## CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitation of D.C. Cir. R. 35(b)(2)(A) because this reply brief contains 2,717 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Century Schoolbook 14-point font.

_/s/ Varu Chilakamarri_
Varu Chilakamarri

K&L Gates LLP
1601 K Street, N.W.
Washington, DC  20006
Phone: (202) 778-9165
varu.chilakamarri@klgates.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system on December 17, 2024.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Varu Chilakamarri*
Varu Chilakamarri

K&L Gates LLP
1601 K Street, N.W.
Washington, DC  20006
Phone: (202) 778-9165
varu.chilakamarri@klgates.com